## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RED BARN CONSULTING, INC.,** | |
| Plaintiffs, | |
| v. | Case No.: |
| **REPUBLIC SERVICES, INC.; REPUBLIC SERVICES OF PENNSYLVANIA, LLC DBA YORK WASTE DISPOSAL,** | CLASS ACTION |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Red Barn Consulting, Inc. files this Class Action Complaint against Defendants Republic Services, Inc.; and Republic Services of Pennsylvania, LLC DBA York Waste Disposal (collectively "Republic" or "Defendants") on behalf of itself and all others similarly situated in Pennsylvania.  In support thereof, Plaintiff states the following:

### I.       NATURE OF THE CASE

1.       Republic has engaged in a widespread and systematic practice of overcharging its customers through two separate, but related coordinated schemes: implementing unlawful Rate Increases and charging unlawful, deceptive and unfair "Fuel Recovery Fees" and "Environmental Recovery Fees" (collectively, the "Fees").

2.       Republic is one of the largest solid waste disposal companies in the United States, with some $3 billion in annual revenue.  Like thousands of other small businesses across the country, Plaintiff entered into standard, preprinted contracts with Republic. These contracts contain a standard "Rate Adjustment" provision that prohibits Republic from increasing monthly rates more than is necessary to pass through cost increases it incurs plus increases in the consumer

price index ("CPI"). In breach of this provision, and of state statutory and common law, Republic increased contract rates for Plaintiff and putative class members without regard to increases in costs or CPI, and by far more than allowed under the contract.

3.      In addition to assessing Rate Increases on its customers, Republic has also increased prices by imposing fees it calls "Fuel/Environmental Recovery Fees" but which, in fact, have no relationship to its actual or increased fuel or environmental costs. Rather, Republic uses these Fees—in intent and effect—as a hidden price increase. The Fuel Recovery Fee bears absolutely no relation to Republic's actual or increased fuel costs and Republic does not use the proceeds from the Fuel Recovery Fee to offset such costs.  In fact, Republic includes any fuel costs it might incur in delivering its services through the standard rates it charges customers and through increases it imposes on customers.  Similarly, the Environmental Recovery Fee bears no relation to any "environmental costs" and Republic does not use the proceeds from this Fee to offset any such costs it might incur.  Indeed, Republic already recovers all costs the Fuel/Environmental Recovery Fee purportedly addresses through its base rate and price increases it assesses customers. Republic simply uses the Fees to generate extra profit at its customers' expense, all the while deceiving customers into believing that the Fees are legitimate charges directly related to specific increased costs it incurs.

4.      Further, this case presents a prototypical situation for class treatment. Republic's conduct—including all relevant practices, conduct, and documents—is uniform among all class members.  The application of common law to an identical course of conduct will determine liability for the classes as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, the proposed classes consist of more than 100 members, and minimal diversity exists (Plaintiff is a citizen of Pennsylvania, while Defendants are citizens of Delaware and Arizona).  Republic has thousands of customers in Pennsylvania, the majority of which, upon information and belief after investigation, entered into the form contract at issue and were subject to the rate increase and fuel surcharge practices at issue here.

6.    This Court has personal jurisdiction over each Defendant because Defendants are authorized to do business and in fact do business in this District, the claims asserted in this case arise or relate in part to conduct that originated and took place in this District, and Defendants could reasonably anticipate litigation in this District under traditional notions of fair play and substantial justice.

7.    Further, Republic Services, Inc. has such continuous and systematic contacts with this state that it is subject to general personal jurisdiction. Republic Services, Inc. in fact controls employees that ostensibly are employed by its Pennsylvania subsidiaries in that it controls their hiring, firing, and wages.

8.    As discussed below, Republic Services, Inc. exercises such dominion and control over its subsidiaries, including Republic Services of Pennsylvania, LLC, that venue is proper and jurisdiction appropriate over all of them in this District. As discussed below, the entire Republic organization (including Republic Services, Inc. and Republic Services of Pennsylvania, LLC) operates as and should be treated as a single entity. The contacts of Republic Services of Pennsylvania, LLC may be imputed to Republic Services, Inc. and its other Pennsylvania

subsidiaries.

9.      Venue is proper in this Court under 28 U.S.C. § 1391. Plaintiff Red Barn Consulting, Inc. is located in this judicial district, and the conduct giving rise to Plaintiff's claims occurred in this judicial district.

### III.    PARTIES

10.     Red Barn Consulting, Inc. is a Pennsylvania corporation. It operated a facility at 3050 Yellow Goose Rd. in Lancaster, Pennsylvania.

11.     Plaintiff's experience with Republic is typical of the classes in all relevant aspects. Plaintiff entered into a form contract with Republic.  Republic unilaterally and unlawfully implemented Rate Increases that affected Plaintiff (in that Plaintiff paid the Rate Increases) which did not comply with the contractual terms.  Plaintiff was invoiced and paid multiple "Fuel/Environmental Recovery Fees" (the "Fees") to Republic within the statutory period while under the form contract. The direct and proximate result of these unlawful, deceptive, and unfair Rate Increases and Fees is that Plaintiff has been damaged by paying more than agreed.

12.     Republic Services of Pennsylvania, LLC is a Delaware limited liability company with its principal address at 18500 North Allied Way, Phoenix, AZ 85054.

13.     Republic Services, Inc. is a Delaware corporation with a principal address at 18500 North Allied Way, Phoenix, AZ 85054.

14.     Defendants, and their related entities, operate as a single organization with regard to the conduct at issue in this lawsuit. Republic Services of Pennsylvania, LLC, like all of Republic Services Inc.'s subsidiaries, are mere alter egos of Republic Services, Inc. The subsidiaries of Republic Services, Inc. are shams solely used by Republic Services, Inc. to hide its unlawful conduct and to attempt to avoid liability.

4

15.     As Republic Services, Inc. itself says: "Our operating model allows us to [] service [] all our customers through the **Republic Way: One Way. Everywhere. Every Day**"[1] In 2016, Republic reorganized its operational structure. Since that time, it has operated through a four-level hierarchy based on geography: Corporate, Areas, Business Units, and Divisions. There is no dispute that the "Corporate" level is synonymous with Republic Services, Inc. There is no operational structure which mirrors a subsidiary distinction. The management structure mirrors this operational structure. BUs are run by General Managers. General Managers report to Area Vice Presidents, who in turn report to Area Presidents. Area Presidents report to Senior Vice Presidents at Corporate. Senior Vice Presidents report to the COO, who reports to the CEO, who reports to the Board of Directors of Republic Services, Inc. Each level has hiring and firing authority over the management below it. While all of these executives and employees are acting on behalf of Republic Services, Inc., they are often "employed" by various Republic Services, Inc. subsidiaries that have no functional significance.  Executives and employees typically do not know which Republic Services, Inc. subsidiary "employs" their direct reports or supervisors.

16.     Republic Services, Inc. has over 800 wholly-owned subsidiaries. Republic Services, Inc. controls all relevant conduct, including the drafting and enforcement of the form contract at issue, pricing, and customer service. Republic Services, Inc. continually siphons funds from its subsidiaries by collecting revenue attributable to the activities ostensibly carried on by the subsidiaries to Republic Services, Inc. directly.

17.     Republic's operation as a single organization extends to other facets as well. For example, when Republic Services, Inc. sues former employees of "subsidiaries" for purported

---

[1] Republic 2022 10-k, available at https://investor.republicservices.com/static-files/25b80fdd-09e5-4b49-ba63-0b247acc3fee (emphasis added).

trade secret violations, it sues in its own name claiming that it is Republic Services, Inc. who employed them and that it is Republic Services, Inc.'s trade secrets (such as customer identities) the former employees possess.

18.     Republic Services, Inc.'s mergers and acquisitions group makes the final decisions on any acquisitions, even if a subsidiary name is ultimately named on the deal documents. After acquisition, Republic transitions the assets acquired to the single Republic branding and payment systems and incorporates them into the unified management structure. Republic informs acquired customers that they are now serviced by "Republic Services, Inc." Indeed, Republic has a single website for all of its operations regardless of location. (*See* https://www.republicservices.com). It utilizes "Republic Services" branding across its operations. These representations lead customers—including Plaintiffs—to reasonably believe that they are dealing with a single organization.

19.     Corporate formalities are ignored. Republic Services, Inc.'s subsidiaries, including Republic Services of Pennsylvania, LLC, do not have independent officers. Republic's internal management documents make no mention of subsidiaries. The subsidiaries do not file their own tax returns; Republic Services, Inc. at the Corporate level does so for them.

20.     Republic Services, Inc. plays a large, indispensable role in administering contracts as well as increasing rates.[2] Republic Services, Inc.'s President, Jon Vander Ark "is responsible for overseeing the Company's operations, sales, marketing and business development."[3] Republic brands itself on its website, in its promotional materials, on its vehicles, and with signage on its

---

[2] *Id*. at 2 ("We seek to obtain long-term contracts for collecting recyclable and solid waste material under residential collection contracts with municipalities, exclusive franchise agreements, and small-container and large-container contracts.").

[3] 2021 Proxy Statement at 48 (available at https://investor.republicservices.com/static-files/5a2c573a-c7a5-4a9f-b58d-fa5a92f98961).

properties as one entity. Republic Services, Inc. has completely centralized and standardized customer service for its subsidiaries, including "consolidat[ing] over 100 customer service locations into three Customer Resource Centers" and instituting standard customer service tools, including the tools by which customers can pay their bills directly to Republic Services, Inc.[4] It has also implemented standardized pricing practices, including the calculation and implementation of Rate Increases. Republic Services, Inc. mandates use of its standardized sales and pricing tools "nationwide."[5] It uses a "Priority Based Selling (PBS) technique" that enables it "to identify and segment customers' buying priorities, and attract customers that are willing to pay for enhanced offerings."[6] For pricing, it mandates the use of a pricing tool called "Capture," "a cloud-based pricing tool that creates a more professional sales experience, helps realize better pricing levels at the point of sale and provides enhanced controls over the price quoting process."[7] Republic Services, Inc. itself seeks "to secure price increases" at issue here. It specifically analyzes contractual "ability" to increase rates based upon the contractual provisions.[8] Republic Services, Inc. specifically tracks the amounts of its revenue attributable to Rate Increases.[9] It actively tracks the numbers of customers on standard form contracts with potentially-varying price increase

---

[4] *Id*. at 4; *see also* 2021 Investor Presentation at 11 (available at https://investor.republicservices.com/static-files/324da296-bf2f-49e2-8321-6aa7afd66085).

[5] Republic 2020 10k at 7.

[6] *Id*.

[7] *Id*.

[8] *Id*. at 26 ("We seek to secure price increases necessary to offset increased costs, improve our operating margins and earn an appropriate return on our substantial investments in assets such as our landfills. . . . Contractual, general economic or market-specific conditions also may limit our ability to raise prices. For example, many of our contracts have price adjustment provisions that are tied to an index such as the consumer price index. Particularly in a weak U.S. economy, our costs may increase in excess of the increase, if any, in the consumer price index . . . . As a result, we may be unable to offset increases in costs, improve our operating margins and obtain adequate investment returns through price increases. Price increases also might cause us to lose volume to lower-cost competitors.")

[9] *Id*. at 36. ("Average yield is defined as revenue growth from the change in average price per unit of service, expressed as a percentage. Core price is defined as price increases to our customers and fees, excluding fuel recovery, net of price decreases to retain customers.").

provisions as a way to increase revenue.[10]

21.     Given the nature of the relationship and structure of the Defendants—and that Republic operates as a single entity with Republic Services, Inc. relying on sham subsidiaries to hide its unlawful conduct— Plaintiff will refer to "Republic" except as otherwise noted herein.

### IV.    FACTUAL ALLEGATIONS

22.     Republic is one of the largest waste disposal companies in the United States, with millions of customers, locations in forty-one states, and over $3 billion in annual revenue.

23.     Plaintiff requires solid waste disposal services and, like thousands of others, entered into standardized agreements with Republic to provide these services. This agreement is a long-term contract that primarily establishes a set rate for disposal services and which contains standardized language that governs it. The agreement also provides how Republic may be able to increase rates to pass through discrete cost increases it incurs during the pendency and renewal terms of that contact.  And, like thousands of other small businesses, after locking customers into these long-term contracts, Republic systematically increased Plaintiffs' rates with no contractual justification and unilaterally imposed unlawful Fuel and Environmental Recovery Fees.

24.     First, Republic's Rate Increases do not—in intent or effect—adjust for increases in its costs or CPI as required by the uniform contractual provision at issue (to the extent Republic incurs any such increased costs at all).  Rather, after entering into long-term, fixed-rate contracts, Republic carries out a deliberate scheme to repeatedly increase rates without contractual justification by amounts that far exceed any increases in costs or CPI that Republic incurs, gleaning tens of millions of dollars of unearned profit from its customers.  This conduct breaches the form contract, is deceptive and unfair, and has resulted in Republic's unjust enrichment.

---

[10] 2021 Investor Presentation at 17 (discussing "open market" versus "restricted pricing" models and "Converting CPI based contracts to a more favorable index or fixed rate of 3% or greater").

25.     Second, the fees Republic calls "Fuel/Environmental Recovery Fees"—comprised by two separate Fees, a "Fuel Recovery Fee" and separately calculated "Environmental Recovery Fee"—are not, in fact, related to Republic's increased or actual fuel and environmental costs at all and Republic has no such costs that it does not recover through other means. They are not charged—or intended—to recover increased or actual fuel and environmental costs and such costs are regardless recovered through other pricing and fee mechanisms.  Republic's charging and collection of these Fees is deceptive and unfair and has resulted in Republic's unjust enrichment.

**A.      The Standardized, Uniform Language At Issue.**

26.     Republic used effectively standardized "customer service agreements" to contract with customers regardless of location.  Each time Republic seeks to secure a customer for its services, it presents an effectively identical form contract controlled by Republic Services, Inc. Every putative class member entered into such an effectively identical form contract. All relevant terms are pre-printed by Republic, including the uniform "Rate Adjustments" provision that governs the Rate Increases at issue in this litigation.  Several categories of customer-specific information—including the billing and service addresses, names and contact information, rates (in dollar amounts which are set by Republic Services, Inc.), and other information needed for Republic to input the new customer into its information systems—is typed or written in for each specific customer. There is no ability for sales representatives to alter the preprinted contractual language in the system.

27.     This Rate Adjustments provision allows for Republic to pass through specific, discrete increases in costs it may incur in providing services to customers.  Specifically, it states Republic:

> may, from time to time by notice to Customer, increase the rates
> provided in this Agreement to adjust for any increase in (a) disposal

costs; (b) transportation costs due to a change in location of Customer or the disposal or recycling facility used by Company; (c) the Consumer Price Index for all Urban Consumers (Water, Sewer and Trash Collection Services), U.S. City Average; (d) the average weight per cubic yard of Customers Waste Materials (e) recycling sorting, processing and related costs; (f) costs related to Customer's failure to separate Recyclable Materials from other Waste Materials…, or (g) Company's costs due to changes in Applicable Laws. Company may increase rates for reasons other than those set forth above with Customer's consent, which may be evidenced verbally, in writing or by the parties' actions and practices.[11] [12]

28.    Thus, under the express terms of this provision, Republic may implement Rate Increases only to adjust for "increases" to discrete costs or CPI.  But Republic goes far beyond that, and its recurring rate increases do not—in intent or effect—passthrough any allowable increased cost or CPI and far outstrip any such costs Republic may incur.

29.    Aside from establishing the fixed rate for service and the limited manner in which Republic may charge more than this rate, the form contract also contains other relevant standard provisions which (a) establish a long term (*e.g.,* Plaintiffs' contracts established an initial term of 36 months), (b) integrate the contract, and (c) allow Republic punitive remedies including suspension, the payment of fees, and the payment of future amounts—up to six months—that Republic maintains are due under the contract in the event a customer fails to pay any amount or wishes to terminate.

**B.    Republic's Unlawful, Unilateral Rate Increase Practice.**

30.    Republic violates the form contract and engages in deceptive and unfair conduct by systematically increasing rates by more than that allowed by the form contractual provision at

---

[11] This contractual language about the CPI was sometimes changed to omit the "(Water, Sewer, and Trash Collections Services), U.S. City Average."  This change is non-substantive.  The allegations and proposed classes herein include all such contracts, and those involving substantively similar language.

[12] As discussed below, Republic never sought any customer's "consent," no customer "consented" to the Rate Increases, nor could any customer do so.

issue.

31.     Republic has carried out a deliberate practice of repeatedly increasing rates in excess of any adjustment necessary for increases in the Consumer Price Index or in any costs it incurs.  Republic induces customers into entering into form contracts with fixed rates while knowing, but not disclosing, that it has an internal corporate practice and strategy of continually and unlawfully increasing rates by more than allowed by contract.

32.     The amount of the Rate Increases varies, but are significant, and can result in customers paying more than twice as much as agreed by the end of an agreement term.  Each increase Republic imposed on class members exceeds increases, if any, in the increases in the Consumer Price Index or disposal costs (particularly per customer disposal costs) Republic may incur.

33.     Republic's unilateral Rate Increases violate the form contractual language that is present in every contact at issue, because they exceed any CPI increase or costs that could justify them.  There is no legal justification for Republic's practice of unilateral Rate Increases.  Republic knows when it presents contracts for fixed rates, that it will inflate these rates precipitously and continually.  Republic's practices breach the form contractual language it entered into with Plaintiff and other small businesses across the United States, violates the duty of good faith and fair dealing that underpins that contract, has resulted in it being unjustly enriched at its customers' expense.  As a direct result of its unlawful rate increase conduct, Republic has wrongfully taken millions of dollars from its customers over the statutory period.

34.     Additionally, Republic lacks consent for the Rate Increases as a matter of law. Republic never sought consent before imposing the Rate Increases and the nature of the Rate Increases and Republic's lack of disclosure regarding the calculation and true purpose of the Rate

Increases makes such consent legally impossible to obtain.

35.     Republic also has omitted material facts regarding the Rate Increases and the Rate Increases are deceptive and unfair.  For example, Republic does not disclose that the increases are not related to any increase in CPI or any allowable cost, that the increases far outstrip increases in CPI or any allowable cost, or that the increases are recognized as profit.  Republic knows when it enters into an agreement with a customer that the customer will pay substantially more than the agreed upon service rate through Rate Increases that are entirely unfair, deceptive and/or misleading.  Republic does not disclose this fact to its customers.

**C.    Republic's Unlawful, Deceptive and Unfair "Fuel/Environmental Recovery Fees."**

36.     Republic charges its customers a fee it calls a "Fuel/Environmental Recovery Fee." These Fees are composed of two separate fees, a "Fuel Recovery Fee" and an "Environmental Recovery Fee" which are calculated separately and purport to recover specific related costs, but often charged together under a single line item on invoices as "Fuel/Environmental Recovery Fee." Republic purportedly charges these Fees to recover the increased fuel costs and environmental costs (respectively) it incurs in providing services to customers in accordance with the uniform representations it makes to customers through language incorporated into invoices and its website. These Fees are imposed as a percentage of all the invoice charges and are significant in amount, reaching over 25% or hundreds of dollars a month for some customers.  Republic periodically increases the percentage of the Fees but, upon information and belief, has never decreased this percentage.

37.     The "Fuel Recovery Fee" is in no way related to Republic's fuel costs it incurs. The "Fuel Recovery Fee" is not charged to defray those increased costs.  Republic does not apply the money received from the "Fuel Recovery Fee" to offset any such increased costs; rather, it is

recognized as revenue and contributes directly to Republic's profit. Republic has not—during the relevant period—experienced any increased "fuel costs," particularly on a per-customer basis, as it enters into fixed-price fuel purchase contracts. Similarly, the "Environmental Recovery Fee" is not related to nor does it offset "environmental" costs incurred by Republic.  In fact, there are no so such costs that are separate from the underlying fundamental overhead Republic incurs, and many of the "environmental costs" are incurred by separate entities that are not part of the solid waste collection business and which separately run a profit (namely, landfills and waste to energy projects).

38.     Republic did not design the "Fuel Recovery Fee" to "recover" any increased or actual fuel costs it incurs. The method by which Republic determines the "Fuel Recovery Fee" has no relation to its increased or actual fuel costs or to any changes in those costs.  It is arbitrary in that the only driving factor is the profit Republic seeks to derive from this fee while maintaining the false appearance of the fee as a legitimate charge related to specific, discrete costs.  Republic has done no legitimate analysis to determine the proper amount of the "Fuel Recovery Fee" in connection to its increased or actual fuel costs. Indeed, the "Fuel Recovery Fee" does not fluctuate in any way with Republic's fuel or material costs and has increased while its per-customer fuel costs have decreased.  For example, the "Fuel Recovery Fee" charged has increased at the same time that fuel costs decreased.

39.     And, similarly, Republic did not design the "Environmental Recovery Fee" to recover any increased or actual environmental costs.  The method by which this fee is determined and imposed is wholly arbitrary in that it does not maintain any relationship to such costs and does not fluctuate with such costs. Republic has done no analysis to determine what, if any, the appropriate amount of such a fee would be if it were to be lawful and contractually justified.

Rather, as with the Fuel Recovery Fee, the Environmental Recovery Fee is a hidden profit device which Republic uses as a method to meet its profit and revenue goals dictated by Republic Services, Inc. through the budgeting process.

40.    Additionally, Republic already fully recovers any fuel and "environmental" costs that purportedly justify these Fees through the base rate it charges customers and increases to that rate. These rates include the individual component costs of Republic's business, including—specifically—the costs of fuel, materials, and other overhead.  When setting and increasing rates, Republic takes into account its fuel and environmental costs to recover such costs, and the "Fuel/Environmental Recovery Fee" is wholly unlawful as it does not reflect any costs that are not already recovered.    As such, Republic has been unjustly enriched by collecting the Fuel/Environmental Recovery Fees and Republic's conduct puts the entirety of the amounts charged at issue.

41.    Republic also has omitted material facts regarding the "Fuel/Environmental Recovery Fees."  For example, Republic does not disclose that the Fees are not related to Republic's increased or actual fuel or environmental costs, that Republic's increased fuel costs are not a factor in the amount of the "Fuel Recovery Fee," that Republic's environmental costs are not a factor in the amount of the "Environmental Recovery Fee," and that the "Fuel/Environmental Recovery Fees" are recognized as profit.   Republic does not disclose its actual fuel or environmental costs to customers nor does it disclose the methodology, to the extent there is one, used to determine the percentage of the invoiced charges that makes up the Fees.  In truth, Republic devised, implemented, and set the amount of the Fees simply to increase its profits without any intent of recovering the actual or increased fuel costs they incur in servicing customers. Republic knows when it enters into an agreement with a customer that the customer will pay substantially

more than the agreed upon service rate through Fees which are entirely unfair, deceptive and/or misleading. Republic does not disclose this fact to its customers.

> **D.    Neither Plaintiffs, Nor Any Putative Class Member, Had Full Knowledge Of the Facts Relating to The "Fuel/Environmental Recovery Fee" Or Rate Increases.**

42.    No putative class member, including Plaintiff had full knowledge of the facts pertaining to the Rate Increases or the "Fuel/Environmental Recovery Fees" such that would allow them to realize or act on their legal claims.

43.    Republic ensures that no customer—including Plaintiffs—can discover the true nature and illegality of the Rate Increases. Republic does not disclose cost metrics—or lack of them—it purportedly is using or the amounts, frequency, and timing of the Rate Increases. Nor does Republic disclose the methodology—or lack thereof—that purportedly justifies the increase or the amount of the increases. Further, Republic represents—including by failing to seek consent for any increases—that these are mandatory increases for specific allowable increases and not increases to which customers may consent. Plaintiff could not have discovered the basis of their claims without either candor from Republic or access to Republic's financial information that it does not make public. Republic made these representations and omissions every time it implemented an increase, including in 2018, 2019, 2020, 2021, 2022, 2023 and 2024 when it implemented Rate Increases applicable to Plaintiffs. Plaintiff reasonably relied on these representations and omissions as evidenced by the payment of the fees and charges. Without such information, no customer could—and Plaintiff did not—determine the illegality of a given rate increase imposed by Republic. For these reasons, Plaintiff and other class members were unaware of the basis of their claims due to the omissions and representations that Republic employed to obscure the facts and calculations of the increases. Plaintiff did not and could not learn of the facts

surrounding the increases—including that they bore no relation to CPI or any other allowable costs and that they exceeded amounts needed to adjust for costs—until shortly before this lawsuit was filed through privileged consultation with counsel.

44.     Further, Plaintiff challenges the Rate Increases. These are separate from increases that Republic may implement "for reasons other than those set forth above with [c]ustomer[s'] consent." When Republic implements an increase for one of the specified reasons—including to adjust for increases in CPI or increased disposal costs—a customer has no discretion whether to accept the increase. It becomes an amount due under the payment provision of the contract. The customer must pay up to six months monthly charges to terminate the contract under the payment upon termination provision of the contract if it wishes to terminate. If the rate increase is one "for reasons other than those set forth," the customer would have a right to terminate the contract for the breach in charging more than agreed without being subject to paying the termination penalty. Thus, there was no consent to the increases at issue here by any class member nor could there be under the terms of the contract.

45.     Republic further ensures that customers cannot discover the true nature, purpose, and use of the "Fuel/Environmental Recovery Fee."  Republic uniformly uses this term to charge this fee to Plaintiff and putative class members.  It does so consistently and continually, including every time it assesses the Fees on monthly invoices.  Republic chose this term for a reason: it has a common, understood meaning for any reasonable consumer, including for Plaintiff and putative class members, and indicates that it is a fee charged to recover increased fuel costs and increased environmental costs incurred by Republic, is related to such costs, and is used to offset or recover such costs, as required by the form agreement. Indeed, it specifically sought to convey this commonly understood meaning by referring to it as an enterprise-wide fee. Even if Republic

disclosed a margin component included in the "Fuel/Environmental Recovery Fee," it still claimed that the Fees were tied to its specific costs, which they are not.

46.     By using this term for the Fees—as opposed to a fee term that is general or accurate, like "service charge" or "additional profit fee"—Republic deliberately misled Plaintiff and putative customers as to the nature, purpose, and use of the Fees. Republic also omitted material facts regarding the Fees, including that they are not related to any actual or increased fuel costs that Republic has and that Republic's fuel costs are not used to set the fee. Republic does not disclose that its methodology bears no relationship to its actual or increased fuel or environmental costs through the percentage it chooses to charge.

47.     Republic thus ensures that no customer—including Plaintiffs—can discover the true nature and illegality of the Fees. Republic does not disclose its actual or increased fuel or environmental costs that purportedly justify the Fees. Nor does Republic disclose that they are not at all related to such costs. Plaintiff could not have discovered the basis of their claims without either candor from Republic or access to Republic's financial information that it does not make public. Republic made these representations and omissions every time it charged the Fees, including on every invoice sent to Plaintiff in 2020, 2021, 2022, 2023 and 2024 and through the representations on its website in existence since 2013. Plaintiff reasonably relied on these representations and omissions as evidenced by the payment of the fees and charges. Without such information, no customer could—and Plaintiff did not—determine the illegality of the Fees charged by Republic. For these reasons, Plaintiff and other class members were unaware of the basis of their claims due to the omissions and representations that Republic employed to obscure the facts and calculations of the Fees. Plaintiff did not learn, and could not have learned, of the facts relating to the Fees—including that it bore no relation to Republic's costs and were not

applied to recover those costs—until shortly before this lawsuit was filed, if then.

48.     Further, Plaintiff and each putative class member were under a contractual, legal obligation to pay the invoiced charges to Republic.  Upon information and belief, Republic enforces its form contracts—including punitive provisions for attorneys' fees and future due amounts—to ensure that customers cannot escape them, even if such customers could have known that the "Fuel/Environmental Recovery Fees" and Rate Increases were unlawful and deceptive.

**E.     Republic's Coercive, Deceptive, And Unlawful Contact With Putative Class Members.**

49.     Following the institution of actions challenging its Rate Increase and Fee practices, Republic has begun a campaign of forcing existing customers into new agreements that purport to prohibit such customers from participating in this litigation or the recovery from this litigation through the inclusion of mandatory arbitration provisions. For example, when a customer complains to Republic regarding a price increase and expresses a desire to cancel because Republic has violated the contract, Republic uniformly tells the customer that they will be liable for up to six months of service charges and demands that the customer sign a new agreement to avoid the charges. Republic does not disclose this or other similar litigation, the recovery a customer may be entitled to should the litigation succeed, or the loss of rights through the new agreement when doing so.

50.     Upon information and belief, Republic has implemented this campaign in direct response to its liability under the litigation. The type and timing of this communication discourages participation in the litigation.  It is coercive and deceptive. Any new agreements that have been signed with the improperly-induced arbitration agreement cannot be an effective bar to participation in this action as they were obtained through uniform false pretenses and deceptive conduct.

## V.    CLASS ACTION ALLEGATIONS

51.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and

(b)(3) and proposes the following classes, subclasses and alternative classes

> **The Pennsylvania Rate Increase Class:** All entities and people who reside in
> Pennsylvania who entered into a Rate Adjustments provision that allows for
> increases to "adjust for" increases in costs or CPI and, from January 1, 2017 through
> the date of class notice, paid rates to Republic in excess of those originally listed in
> the written contract as a result of Republic's rate increase policy.

> **The Pennsylvania Fees Class:** All entities and people who reside in Pennsylvania
> who entered into a Rate Adjustments provision that allows for increases to "adjust
> for" increases in costs or CPI and, from January 1, 2017 through the date of class
> notice, paid Fuel Recovery Fees and/or Environmental Recovery Fees to Republic.

52.    The Classes includes such customers who entered into contracts which provide "the

Consumer Price Index for All Urban Consumers" or substantively similar language.

53.    Excluded from the proposed classes are (1) any customer who entered into a

contract which contains an arbitration provision or class waiver (but only to the extent such a

provision is enforceable and applicable and only for to the time period or claims to which it

applies), (2) any customer who has signed a release of any claims against Republic, (3) any

customer who makes a timely election to be excluded from the Class, (4) any parents, subsidiaries,

affiliates, officers, or directors of Republic, (5) any entity in which Republic has a controlling

interest, (6) members of the judiciary who preside over this case or related litigation, (7) entities

currently in bankruptcy or whose obligations have been discharged in bankruptcy, and (8)

governmental entities.

54.    As used in these class definitions, "Republic" means Republic Services, Inc.;

Republic Services of Pennsylvania, LLC d/b/a York Waste Disposal, and all related entities,

predecessors, subsidiaries, affiliates, and parent companies that operate in Pennsylvania.

55.     As used in these definitions, "Fuel/Environmental Recovery Fee" includes this fee regardless of the nomenclature used to charge it, including when charged through the component Fees "Fuel Recovery Fee" and "Environmental Fee."

56.     Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

**A.     Existence And Predominance Of Common Questions Of Law And Fact.**

57.     Republic engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of conduct— imposing "Fuel/Environmental Recovery Fees" and Rate Increases that were unlawful and excessive—affected class members in the exact same manner. The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Republic's common conduct. A single, uniform, pre-printed contract will govern all class members' contractual claims. Extraneous contractual evidence is prohibited by a form integration clause.

58.     This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include, but are not limited to, the following:

a.   Whether Republic used standard form contracts with customers;

b.   Whether Republic imposed Rate Increases on putative class members who entered into the standard contract;

c.   Whether Republic's standard contract only allowed Republic to increase rates to adjust for increases in the specifically identified categories of costs;

d.   Whether Republic's Rate Increases exceeded any adjustments for increases in the specific costs which could support them under the contract;

e.   Whether the Rate Increases Republic enacted were not in good faith;

f.   Whether the Rate Increases Republic enacted resulted in it being unjustly enriched;

g.   Whether Republic assessed "Fuel/Environmental Recovery Fees" to customers;

h.   Whether the "Fuel/Environmental Recovery Fee" Republic imposes were designed or intended to recover Republic's actual or increased fuel and environmental costs;

i.   Whether Republic has any increased fuel or environmental costs;

j.   Whether Republic recovers the same costs which purportedly justify the "Fuel/Environmental Recovery Fee" through other means, including base rates and increases to such rates;

k.   Whether Republic uses revenue from the "Fuel/Environmental Recovery Fee" to offset its fuel and environmental costs;

l.   Whether the "Fuel/Environmental Recovery Fees" exceed any fuel or environmental costs Republic may incur;

m.   Whether Republic has been unjustly enriched by the "Fuel/Environmental Recovery Fees."

**B.   Numerosity.**

59.   The total number of members of each putative class is so numerous that individual joinder is impracticable.  Republic has thousands of customers in the states at issue who entered in the form contract and paid the "Fuel/Environmental Recovery Fee" and Rate Increases.

**C.   Typicality.**

60.   The claims of the named Plaintiff are typical of the claims of the classes and

subclasses. Plaintiffs, like other class members, entered into the form contract and paid Rate Increases that were not legally justified. Plaintiff paid unlawful Fuel/Environmental Recovery Fees. Plaintiff was subject to, and harmed by, the exact same common policies and practices which affected all class members.

### D.    Adequacy.

61.    Plaintiff will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiff shares the same interests and were harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiff equally with class members. Plaintiff has retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

### E.    Superiority And Manageability.

62.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is considerable, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims. The interests of judicial economy favor adjudicating the claims for the classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Republic. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (Rate Increase Class)

63.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

64.    Plaintiff and each member of the Rate Increase Class entered into standardized agreements with Republic which contain identical relevant contractual language.

65.    Each Defendant, including Republic Services, Inc., is liable for breach of these contracts. The entities that formally are listed on the contracts with Plaintiff and putative class members— (the "Subsidiaries")—are sham entities and are the alter egos of Republic Services, Inc., which functionally and legally is a single entity. As described above, the Subsidiaries are totally financially dependent on Republic Services, Inc. Republic Services, Inc. uses the funds of the Subsidiaries as its own, recognizes the Subsidiaries' revenue as its revenue, fails to observe the corporate formalities with the Subsidiaries, selects and directs the directors and officers of the subsidiaries, and otherwise dominates the operations of the subsidiaries. Even more central here, Republic Services, Inc. controls the calculation, amounts, and timing of the Rate Increases. Republic Services, Inc. exerts this control over the Subsidiaries to the detriment of the Plaintiff and members of the Rate Increase Class.

66.    Plaintiff and each member of the class performed on their agreements, including by paying Republic for services.

67.    As set out herein, through its practice of unilaterally increasing rates by more than allowed under the contract Republic breached the agreements.

68.    The Rate Increases violate the contract in that they exceed and are not charged for

or used to recover any of the purported costs or CPI increases set out in the Rate Adjustments provision.

69.    To the extent necessary, Plaintiff pleads that the statute of limitations has been tolled because no Plaintiff or class member could have known about Republic's unlawful conduct (as detailed above). Moreover, Plaintiff and class members were members of a putative class in actions against Republic pending in federal courts in Missouri and South Carolina for several years and were only recently excluded from such putative classes.

70.    Plaintiff and each member of the Rate Increase Class have been directly and proximately harmed by Republic's breach of contract in that each paid more than allowed by contract.

## COUNT II
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (Rate Increase Class)

71.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

72.    To the extent necessary, this count is pled in the alternative. Republic maintains that the Rate Increases are allowed under the express language of the Rate Adjustments provision. Plaintiff maintains that the Rate Increases violate this provision but that, should the jury find otherwise, any discretion Republic has to charge the Rate Increases must be exercised in good faith and that the method and amount of the Rate Increases breaches this obligation.

73.    Plaintiff and each member of the Rate Increase Class entered into standardized agreements with Republic which contain identical relevant contractual language.

74.    Each Defendant, including Republic Services, Inc., is liable for breach of these contracts. The entities that are listed on the contracts with Plaintiff and putative class members—

the "Subsidiaries"—are shame entities and merely acted as agents, instrumentalities and alter egos of Republic Services, Inc., which functionally and legally is a single entity. As described above, the Subsidiaries are totally financially dependent on Republic Services, Inc. Republic Services, Inc. uses the funds of the Subsidiaries as its own, recognizes the Subsidiaries' revenue as its revenue, fails to observe the corporate formalities with the Subsidiaries, selects and directs the directors and officers of the subsidiaries, and otherwise dominates the operations of the subsidiaries. Even more central here, Republic Services, Inc. controls the calculation, amounts, and timing of the Rate Increases. Republic Services, Inc. exerts this control over the Subsidiaries to the detriment of the Plaintiff and members of the Rate Increase Class.

75.    Plaintiff and each member of the class performed on their agreements, including by paying Republic for services.

76.    The Rate Increases violate the contract in that they exceed and are not charged for or used to recover any of the purported costs or CPI increases set out in the Rate Adjustments provision.

77.    Republic failed to perform on the agreements in good faith.  Republic acted arbitrarily and capriciously. It failed to fulfill any discretionary duties it might have under the contract to adjust rates reasonably and in good faith.  Republic's uniform course of conduct in raising rates lacks honesty in fact and is inconsistent with the justified expectation that Republic would increase rates reasonably and only in accordance with the terms of the uniform contract. Through its wrongful conduct, Republic unfairly prevented Plaintiff and each member of the class from receiving the full benefits of their agreements.

78.    To the extent necessary, Plaintiff pleads that the statute of limitations has been tolled because no Plaintiff or class member could have known about Republic's unlawful conduct

(as detailed above). Moreover, Plaintiff and class members were members of a putative class in actions against Republic pending in federal courts in Missouri and South Carolina for several years and were only recently excluded from such putative classes.

79.    Plaintiff and each member of the Rate Increase Class and Subclasses have been directly and proximately harmed by Republic's breach of the covenant of good faith and fair dealing in that each paid an unlawfully increased rate.

**COUNT III**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(Fees Class)**

80.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

81.    To the extent necessary, this count is pled in the alternative. Republic maintains that the Fees are allowed under the express terms of the contract. Plaintiff maintains that the violate the express terms of the contract but, should the jury find otherwise, any discretion Republic has to charge the Fees must be exercised in good faith and that the method and amount of the Fees breaches this obligation.

82.    Plaintiff and each member of the Fees Class entered into standardized agreements with Republic which contain identical relevant contractual language.

83.    Each Defendant, including Republic Services, Inc., is liable for breach of these contracts. The entities that are listed on the contracts with Plaintiff and putative class members—the "Subsidiaries"—are sham entities and merely acted as agents, instrumentalities and alter egos of Republic Services, Inc., which functionally and legally is a single entity. As described above, the Subsidiaries are totally financially dependent on Republic Services, Inc. Republic Services, Inc. uses the funds of the Subsidiaries as its own, recognizes the Subsidiaries' revenue as its

revenue, fails to observe the corporate formalities with the Subsidiaries, selects and directs the directors and officers of the subsidiaries, and otherwise dominates the operations of the subsidiaries. Even more central here, Republic Services, Inc. controls the calculation, amounts, and timing of the Fees. Republic Services, Inc. exerts this control over the Subsidiaries to the detriment of the Plaintiff and members of the Fees Class.

84.    Plaintiff and each member of the class performed on their agreements, including by paying Republic for services.

85.    Republic engaged in bad faith and unfair conduct with regard to the systematic, unlawful Fees practices as set out above, including by charging Fuel and Environmental Recovery Fees that were not related to any actual costs incurred by Republic and where such costs were already fully recovered by other charges and price increases. The Fee terms themselves are imposed in bad faith in that these Fees do not, in intent or effect, "recover" for any fuel or environmental costs. Republic further fails to disclose material facts to Plaintiff and members of the putative class, including the true nature of the Fees.

86.    Specifically, Republic's bad faith and unfair practices directed toward Plaintiff and putative class members include:

    a.    the naming of the "Fuel/Environmental Recovery Fee" as such given the true nature and effect of the fee;

    b.    the representation that the "Fuel/Environmental Recovery Fee" is reasonably and directly related to Republic's actual or increased fuel and environmental costs;

    c.    the failure to disclose that the "Fuel/Environmental Recovery Fee" is not related to any fuel or environmental cost Republic incurs;

d.   the failure to disclose that the "Fuel/Environmental Recovery Fee" is not used to offset any fuel or environmental costs Republic incurs but rather is recognized as separate revenue which solely contributes to Republic's profit;

e.   the failure to disclose that the "Fuel/Environmental Recovery Fee", in intent and effect, operates as a hidden price increase;

f.   the failure to disclose that Republic already wholly recovers for the costs which purportedly justify the "Fuel/Environmental Recovery Fee" through the fees and prices it charges;

g.   the failure to disclose that periodic increases in the amount of the "Fuel/Environmental Recovery Fee" are driven, not by any legitimate analysis or cost Republic incurs, but solely by efforts to increase profit margins.

87.   Republic makes these representations and omissions every time it sends an invoice to each subclass member charging the "Fuel/Environmental Recovery Fee," falsely naming it as such, and falsely describing it. To reiterate the misrepresentation allegations made herein, (1) the false statements made include the term "Fuel/Environmental Recovery Fee," and other representations about the calculation of the charge including that it was related to Republic's fuel and environmental costs, (2) these statements were made on each invoice sent to Plaintiff and putative subclass members[13], (3) the representations were deceptive because, in part, the "Fuel/Environmental Recovery Fee": has nothing to do with Republic's fuel or environmental costs, is not charged to recover such costs, is not used to defray such costs (which are recovered through other fees and prices already), and acts as a hidden price increase which Republic retains as pure profit, and (4) as a result, Republic obtained money through payments Plaintiff and putative

---

[13] Republic sends out invoices at least monthly by US Mail and electronically, including throughout the class period to Plaintiff.

subclass members made of the "Fuel/Environmental Recovery Fee."

88.    Republic omitted relevant important facts regarding the Fees, including that they were not related to fuel or environmental cost actually incurred, that they were not used to offset or pass-through such costs, that Republic has no designated "environmental costs", and that Republic recovers any actual fuel and environmental costs increases through its rate increases practices, in communications made about rate increases on the Republic website, and on messages about rate increases on invoices.

89.    As a result of the bad faith and unfair practices described above, Plaintiff and each member of the putative subclass incurred actual damages in that they paid the Fees.

90.    To the extent necessary, Plaintiff pleads that the statute of limitations has been tolled because no Plaintiff or class member could have known about Republic's unlawful conduct (as detailed above). Moreover, Plaintiff and class members were members of a putative class in actions against Republic pending in federal courts in Missouri and South Carolina for several years and were only recently excluded from such putative classes.

## PRAYER FOR RELIEF

91.    Plaintiffs, on behalf of itself and each member of the putative classes and subclasses, demand all remedies and damages available to them, including all unlawful Rate Increases paid, the entirety of all Fuel/Environmental Recovery Fees paid, injunctive relief (including declaratory relief, a prohibition on future unlawful Rate Increases or surcharges, and a finding that the arbitration provisions and class waivers in recent putative class member contracts are unenforceable), restitution, interest, and the attorneys' fees and costs incurred in bringing this action.

## JURY DEMAND

92.      Plaintiff and the Classes are entitled to, and demand, a trial by jury.

Dated: June 9, 2025                    Respectfully submitted,

By: /s/ Regina D. Poserina
KREINDLER & ASSOCIATES
Regina D. Poserina
PA I.D. No. 66486
2230 Rte 70 W, Ste 2
Cherry Hill, NJ 08002
609.560.7422
rposerina@blowthewhistle.com

Nicholas W. Armstrong (*pro hac vice forthcoming*)
Oscar M. Price, IV (*pro hac vice forthcoming*)
Graham Cotten (*pro hac vice forthcoming*)
PRICE ARMSTRONG, LLC
1919 Cahaba Road
Birmingham, AL 35223
Phone: 205.208.9588
nick@pricearmstrong.com
oscar@pricearmstrong.com
graham@pricearmstrong.com

*Attorneys for Plaintiffs*